## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROE,<br><br>                          Plaintiff,<br><br>          v.<br><br>TABU LOUNGE & SPORTS BAR, *et al.*<br><br>                          Defendants. | Case No. _____ |

## MOTION OF PLAINTIFF TO PROCEED ANONYMOUSLY

Plaintiff hereby files the instant Motion to Proceed Anonymously and incorporates by reference all of the arguments contained in the accompanying Brief, as if the same were more fully set forth herein at length.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court grant the instant Motion to Proceed Anonymously; permit Plaintiff to use the pseudonym, "Roe"; and permit Plaintiff to redact their home address from the Complaint.

                              Respectfully submitted,


                              **THE LAW OFFICES OF ERIC A. SHORE, P.C.**


DATED: 07/29/2020          BY:     */s/ Justin F. Robinette ,Esquire*
                              **JUSTIN F. ROBINETTE, ESQUIRE**
                              Two Penn Center
                              1500 JFK Boulevard, Suite 1240
                              Philadelphia, PA 19102
                              Tel:  (215) 944-6121
                              Fax: (215) 944-6124
                              E-mail: JustinR@ericshore.com

                              *Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| ROE, | Case No. _____ |
| Plaintiff, | |
| v. | |
| TABU LOUNGE & SPORTS BAR, *et al.* | |
| Defendants. | |

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO PROCEED ANONYMOUSLY**

Plaintiff hereby files the instant Brief in Support of the Plaintiff's Motion to Proceed

Anonymously, and states as follows:

**I.   MATTER BEFORE THE COURT:**

Plaintiff's Motion to Proceed Anonymously, and Brief in Support Thereof.

**II.   QUESTION PRESENTED:**

1.   Whether Plaintiff should be permitted to proceed with a pseudonym and redact
their home address from the Complaint based on Plaintiff's allegations of
discrimination and harassment on account of gender identity, and because
Plaintiff has a legitimate hear of future retribution or harm?

Suggested Answer:  **YES.**

**III.   STATEMENT OF FACTS:**

Plaintiff files the instant request for anonymity in order to proceed under the pseudonym,

"Roe," in Plaintiff's Complaint.   "Roe" is appropriate as Plaintiff does not prefer to identify as

male or female, and therefore "Jane Doe" or "John Doe" would not be preferred.  Plaintiff

identifies in the Complaint as transgender and non-binary with "they," "them," and "theirs"

pronouns.  See Pltf.'s Compl., at para. 1.

Plaintiff alleges that Defendants, Tabu Lounge & Sports Bar, and Mikey II, LLC, which operates the bar, discriminated against, harassed, and terminated Plaintiff on account of their non-binary and transgender status.  See id. at para. 18-20.  Plaintiff advances claims of discrimination and retaliation on account of sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), and on account of disability under the Americans with Disabilities Act ("ADA").  See id.  Plaintiff suffers from gender dysphoria ("GD").  See id. at para. 134.

Plaintiff alleges that Tabu created "an unsafe space for members of the transgender, non-binary, and gender non-conforming community," and "fostered a culture of retaliation against those who rebuffed or complained about harassment and discrimination such as Roe."  See id. at para. 18-19.  Plaintiff alleges more specifically that they suffered misgendering, harassment, and a sexually hostile work environment, at Tabu, including by supervisors, co-employees, and also customers.  See id. at para. 22-38.  Roe regularly rebuffed or corrected the misgendering and harassment during their employment.  See id. at para. 88.

Tabu terminated Plaintiff on or about December 8, 2019, and supplied Plaintiff in writing with a termination notice, by e-mail, which stated, "*First, I'd like to sincerely thank you for everything you've done for Tabu over the past year.  During that time, you have been a key asset in helping Tabu make the transition into what we've become today.  For that we will be forever grateful.  Like any business, tough choices have to be made and this is undoubtedly one of the toughest.  Upon meeting with ownership and management, we've decided that it is time to move in another direction as a business and bring in people who we feel better fit our vision*."  See id. at para. 44.  No further information was provided.  The termination e-mail is attached as an exhibit to Plaintiff's Complaint.

Plaintiff alleges that Tabu terminated Plaintiff on account of the fact that Plaintiff did not meet the stereotyped vision or expectation for a cisgender male.  Plaintiff points to the fact that they were hired by Tabu at a time when they initially presented as masculine.  See id. at para. 12, 14.  Plaintiff transitioned during their employment at Tabu.  See id. at para. 12.  Plaintiff was then terminated, for no other reason initially given besides Plaintiff not fitting the vision of the establishment.  Plaintiff further points to a number of comparators in the Complaint, who are believed to identify as male or masculine, and Plaintiff contends these comparators were ultimately treated more favorably than the Plaintiff, who does not identify as male or masculine. See id. at para. 47-48, 55, 77.

Due to the evidence of discrimination Plaintiff faced during their employment, as well as statistics which confirm that violence against LGBT people has been on the rise, Roe fears further violence or retribution against them if their name and address are revealed in this lawsuit. For these reasons, Plaintiff respectfully requests that this Honorable Court permit Plaintiff to adopt the pseudonym, "Roe," in this litigation, and to redact their address from the Complaint.

## IV.   **LEGAL ARGUMENT:**

It is well-recognized that a party may proceed under a pseudonym in a lawsuit when there is a fear of social stigma resulting from disclosure of the party's sexual orientation or transgender status.  See Doe v. Megless, 654 F.3d 404, 408-09 (3d Cir. 2011); see also Doe v. Borough of Morrisville, 130 F.R.D. 612, 614 (E.D. Pa. 1990).

In Doe v. Megless, the Third Circuit Court of Appeals specifically relied on the Eastern District of Pennsylvania's decision in Doe v. Borough of Morrisville, supra., for its holding that cases involving a litigant's LGBT status were generally appropriate for pseudonyms.  Megless, 654 F.3d at 408-09 (citing Doe v. Borough of Morrisville, 130 F.R.D. at 614)).

5

The Third Circuit in Doe v. Megless explained that a balancing test should be used when deciding whether "a litigant has a reasonable fear of severe harm that outweighs the public's interest in open litigation." Megless, 654 F.3d at 408-09. Generally speaking, to proceed under a pseudonym, the "plaintiff must show 'both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable.'" Megless, 654 F.3d 404, 408 (citing Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est., 596 F.3d 1036, 1043 (9th Cir. 2010)); see also Doe v. United Servs. Life Ins. Co., 123 F.R.D. 437, 438 (S.D.N.Y. 1988).

The Third Circuit in Megless adopted a "non-exhaustive" list of factors from Doe v. Provident Life and Accident Insurance Company, 176 F.R.D. 464 (E.D. Pa. 1997), with respect to evaluating whether anonymity is warranted, including as follows, with respect to factors that favor anonymity:

(1)    The extent the litigant's identity has been kept confidential;

(2)    The basis on which disclosure is feared or avoided, and its substantiality;

(3)    The magnitude of the public interest in maintaining the litigant's confidentiality;

(4)    Whether, due to the purely legal issues, there is an atypically weak public interest in knowing the litigant's identity; and

(5)    Whether the litigant has illegitimate ulterior motives.

Megless, 654 F.3d at 409 (citing Doe v. Provident Life and Acc. Ins. Co., 176 F.R.D. 464, 467 (E.D. Pa. 1997)).

Furthermore, the following are factors which tend to disfavor anonymity:

(1)    Whether there is universal public interest in accessing the litigant's identity;

(2)    Whether, due to the subject matter, the litigant's status as a public figure, or otherwise, weighs strongly toward knowing [the litigant's] identity, beyond the [general] public interest; and

(3)    Whether opposing counsel, the public, or the press is illegitimately motivated.

6

Megless, 654 F.3d at 409 (citing Doe v. Provident Life and Acc. Ins. Co., 176 F.R.D. at 467).

> **A.    Plaintiff's Gender Identity Should Be Kept Confidential in this Lawsuit, And Should Not Be Revealed In This Lawsuit As It Would Tend to Out Plaintiff As Transgender Beyond the Extent to Which Plaintiff Is Comfortable – Plaintiff is Non-Binary and Transgender**

When deciding whether a litigant can proceed anonymously in a lawsuit, the court should consider "the extent to which the identity of the litigant has been kept confidential." Doe v. Megless, 654 F.3d 404, 409 (3d Cir. 2011).

Plaintiff also notes that a conditional grant of anonymity was recently permitted in LGBT discrimination cases in this jurisdiction, including, of note, Doe v. The Gardens for Memory Care at Easton, No. 18-4027, ECF Nos. 3-4 (E.D. Pa. 2018), and Doe v. Triangle Doughnuts, LLC, No. 19-5275, ECF No. 23 (E.D. Pa. June 23, 2020). Both are recent cases out of the Eastern District of Pennsylvania, which involved transgender employees suing for hostile work environment and wrongful termination, where the Court granted anonymity. See also Doe v. Parx Casino, No. 18-5289 (E.D. Pa. Jan. 2, 2019) (permitting anonymity for lesbian female with a "masculine gender expression," in a hostile work environment and wrongful termination case, due to fear of retribution even though the plaintiff was openly gay); Doe v. Dallas, 16-cv-787-JCJ (E.D. Pa. Mar. 10, 2016) (Dkt. 3) (anonymity permitted for transgender litigant alleging discrimination due to gender dysphoria ('GD') under the Affordable Care Act); Doe v. Romberger, 16-cv-2337-JP (E.D. Pa. June 27, 2016) (Dkt. 8) (anonymity permitted for transgender litigant challenging barriers to obtaining an accurate birth certificate); Doe v. Brennan, No. 19-5885, ECF Nos. 17-18 (E.D. Pa. April 27, 2020) (anonymity granted in an employment discrimination case, where the plaintiff alleged sexual-orientation discrimination,

on account of plaintiff's sexual orientation and HIV-positive status); Doe v. Dee Packaging

Solutions, Inc., No. 20-2467, ECF No. 7 (E.D. Pa. July 23, 2020) (same).

Furthermore, the Middle District of Pennsylvania issued a decision granting a transgender

litigant anonymity, which is persuasive, and in that opinion, the Hon. Matthew W. Brann found

for the transgender employee that they could pursue their employment discrimination case under

a pseudonym.  See Doe v. Pa. Dep't of Corrections, No. 19-1584, 2019 WL 5683437 *1, *2

(M.D. Pa. Nov. 1, 2019) (Brann, J.).  The court held that pseudonyms were generally appropriate

in litigation surrounding transgender issues, noting that "as litigation around transgender issues

has increased, so too have more courts permitted transgender plaintiffs to proceed

pseudonymously."  Id.  In Doe v. Department of Corrections, the court permitted a transgender

former employee of the Commonwealth of Pennsylvania, to proceed anonymously in an

employment discrimination case in which the employee alleged hostile work environment and

constructive discharge resulting from episodes of misgendering and anti-trans bias.  Id.

Likewise, on January 14, 2020, the Middle District of Pennsylvania permitted a litigant to

proceed anonymously who is a current transgender employee of the Commonwealth of

Pennsylvania.  The employee alleges discrimination by the Commonwealth in its employer-

sponsored health plan which allegedly excluded coverage for gender confirmation surgery for

people who are transgender.  See Doe v. Commonwealth of Pennsylvania, et al., No. 19-2193,

Dkt No. 5 (M.D. Pa. Jan. 14, 2020) (Rambo, J.).  In Doe v. Commonwealth of Pennsylvania, the

Honorable Sylvia H. Rambo specifically relied on Judge Brann's prior decision in Doe v.

Department of Corrections in order to permit the litigant to proceed anonymously.  See id. at p.

3.  Judge Rambo reasoned, in Doe v. Commonwealth of Pennsylvania, that anonymity was

justified because the plaintiff in that case "fear[ed] that publicly disclosing his gender identity

places him at risk of being subjected to social stigma and violent attacks," and that "keeping his name and address stricken from the pleadings would not impair the public's interest in following lawsuits or the opposing parties' interest in investigating the case." See id. at pp. 2-3. While Judge Rambo reasoned that "[t]he public may have an interest in following the state of the law governing transgender people," Judge Rambo nevertheless recognized in that case that the public "has very little interest in finding out the identity of a specific transgender person." See id. at p. 3. See also Doe v. Univ. of Scranton, Case No. 3:19-cv-01486, ECF No. 24 (M.D. Pa. Mar. 16, 2020) (anonymity permitted for openly gay student in Title IX gender stereotyping case).

Plaintiff's request comports with other courts' grants of anonymity to LGBT litigants in this jurisdiction, as well as the Middle District of Pennsylvania. Consistent with the cases above, Plaintiff respectfully contends that conditionally granting the instant Motion unless circumstances arise which otherwise warrant disclosure is appropriate at this time so that Plaintiff is not outed beyond an extent to which they are comfortable.

**B.** **Plaintiff Faces a Possible Risk of Stigma, Violence, or Retribution If Plaintiff's Gender Identity Is Disclosed In This Lawsuit Beyond An Extent To Which They Are Comfortable.**

As the Third Circuit explained in Doe, the "bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases," weigh in favor of allowing anonymity. Megless, 654 F.3d at 409.

In a persuasive decision of the Eastern District of Pennsylvania, Doe v. Parx Casino, No. 18-5289, ECF No. 4 (E.D. Pa. Jan. 2, 2019) (Slomsky, J.), cited above, the Honorable Joel H. Slomsky recently permitted a lesbian plaintiff to proceed under a pseudonym, in an alleged sexual-orientation discrimination case, although in that case the plaintiff could not show that she kept her sexual orientation sufficiently confidential because she admitted to being openly lesbian

in her underlying discrimination complaint.  See Doe v. Parx Casino, No. 18-5289, ECF No. 4

(E.D. Pa. Jan. 2, 2019) (Slomsky, J.), at p. 2.  Instead, the plaintiff in Doe v. Parx Casino alleged

that she "fears that if she were to proceed under her given name, she might face violence,

intimidation, and retribution based on her sexual orientation."  See id.   Although the defendant-

employer in Doe v. Parx Casino did not oppose the request for anonymity, the defendant-

employer did file a response including in the pertinent statement of facts, *inter alia*, that the

plaintiff alleged she was "openly lesbian" in her complaint.  See id. at p. 3.  Nevertheless, the

court in Doe v. Parx Casino considered the Megless list of factors to be a "non-exhaustive list,"

and therefore "not comprehensive."  See id. at pp. 2-3.  Confidentiality, or the degree to which a

litigant has kept a certain matter confidential, is only *one* factor in the list of non-exhaustive

Megless factors.

Judge Slomsky ruled in Doe v. Parx Casino that the plaintiff "has shown that she has a

reasonable fear of harm if she were to litigate without a pseudonym" because she "alleges that

she has faced pervasive harassment based on her sexual orientation and the fact that she has a

masculine gender expression," "[s]he alleges discriminatory conduct by co-workers that range

from insults and name-calling to aggression, intimidation, and threats of physical violence," and

"[a]s a result, she fears that proceeding anonymously will result in further threats, violence, and

retribution."  See id. at p. 3.  This analysis was conducted independently of the question of

confidentiality, which the plaintiff in Doe v. Parx Casino could not satisfy because she admitted

she was being discriminated against because she was openly lesbian.

Furthermore, in a second recent, persuasive decision, Doe v. The Gardens for Memory

Care at Easton, the Honorable Wendy Beetlestone of the Eastern District of Pennsylvania

permitted a transgender employee to use a pseudonym in a wrongful termination and hostile

work environment case based, in part, on evidence not of physical violence, but simply based on the fact that the "[p]laintiff sets forth a litany of comments and actions at work which she alleges were directed at her transgender status and which support the workplace discrimination claims she makes."  See Doe v. The Gardens for Memory Care at Easton, Case No. 18-4027 (E.D. Pa. Sept. 21, 2018) (Beetlestone, J.), at p. 2, para. 5.  In Doe v. The Gardens for Memory Care at Easton, the court ruled that, in addition to the weight of statistical and anecdotal evidence of anti-transgender violence and discrimination which the plaintiff had set forth in that case, the workplace harassment actually faced by the plaintiff in that case also factored into the court's decision to grant anonymity.  Id.; see also Doe v. Univ. of Scranton, Case No. 3:19-cv-01486, ECF No. 24, p. 5 (M.D. Pa. Mar. 16, 2020) ("In addition to the record containing no indication that the plaintiff's allegations are unfounded, the court is well-aware of the threat of violence that the LGBTQ community can face.  As such, we find plaintiff's reasons compelling for allowing him to proceed anonymously").

Like the transgender employee in Doe v. The Gardens for Memory Care at Easton, Plaintiff in the instant case points to evidence of discrimination, harassment, and retaliation in the workplace to support their request for anonymity in the instant case.  Plaintiff also points to additional anecdotal evidence and statistics to buttress this request for anonymity, as did the plaintiff in Doe v. The Gardens for Memory Care at Easton.

More specifically, it was made public this past June 2020 that a Philadelphia transgender woman, Dominique Rem'mie Fells, was killed in Philadelphia, and there is currently a suspect in custody.[1]  This July 2020, it was also reported that a Philadelphia transgender woman was shot

---

[1] See https://www.fox29.com/news/police-investigating-murder-of-transgender-woman-dominique-remmie-fells; https://www.phillyvoice.com/dominique-remmie-fells-philly-suspect-akhenaton-jones-transgender-woman-homicide-schuylkill/ (Last Accessed July 29, 2020).

near a motel in Philadelphia, and was reported in stable condition.[2]  On May 19, 2019, it was made public that a transgender woman and Philadelphia LGBTQ+ advocate, Michelle "Tamika" Washington, was shot and killed in Philadelphia.[3]  On September 5, 2018, it was made public that a transgender woman, Shantee Tucker, was shot and killed in Philadelphia.[4]  Statistics confirm that transgender individuals are more likely to suffer violence because of their gender identity.[5]  It has been reported that 2018 was the deadliest year for transgender individuals.[6] Before then, the year 2017 was also on record then as the deadliest year for transgender individuals.[7]  2016 was also reported at the time as the deadliest year for transgender individuals.[8]

---

[2] See https://www.fox29.com/news/police-transgender-woman-shot-at-motel-in-northeast-philadelphia (Last Accessed July 29, 2020).

[3] See https://www.inquirer.com/news/tamika-michelle-washington-transgender-woman-of-color-advocate-killed-north-philadelphia-20190521.html (Last Accessed July 29, 2020).

[4] See Shaw, Julie, "Philly cops seek killer of trans woman, say motive behind shooting unclear," *Philly.com* (Sept. 5, 2018) [http://www2.philly.com/philly/news/crime/shantee-tucker-philadelphia-shooting-trans-woman-old-york-road-hunting-park-20180905.html] (Last Accessed September 18, 2018).

[5] See McBride, Sarah, "HRC & Trans People of Color Coalition Release Report on Violence Against the Transgender Community," *Human Rights Campaign* (November 17, 2017; Updated January 2018) [https://www.hrc.org/blog/hrc-trans-people-of-color-coalition-release-report-on-violence-against-the] (Last Accessed September 18, 2018).

[6] See https://www.usatoday.com/story/news/2018/09/26/2018-deadliest-year-transgender-deaths-violence/1378001002/; https://www.cnn.com/2019/01/16/health/transgender-deaths-2018/index.html (Last Accessed July 29, 2020).

[7] See Human Rights Campaign, "Violence Against the Transgender Community in 2017," [https://www.hrc.org/resources/violence-against-the-transgender-community-in-2017] (Last Accessed September 18, 2018).

[8] See Thomson Reuters Foundation, "2016 was Reportedly the Deadliest Year Ever for Transgender People," *Huffington Post* (November 11, 2016) [http://www.huffingtonpost.com/entry/transgender-people-2016_us_5824f1c3e4b034e38990c47c] (Last Accessed September 18, 2018).

It is being reported that 2020 may see more reported deaths than the previous year.9

Violence, including fatal violence, against LGBTQ+ people, is on the rise currently.10

Homicides of LGBTQ+ people have been on the rise since 2007.11  There has also been a rise in

hate speech, and hate crimes, in the Philadelphia region in the last few years.12

      Plaintiff is not suggesting these circumstances are the same.  Plaintiff respectfully brings

the above matters to this Court's attention, however, in light of the fact that Defendants

expressed an intent to challenge this request for anonymity.  Out of an abundance of caution,

Plaintiff wishes to point out that Plaintiff *does*, in point of fact, face an increased chance today of

---

9 See https://www.cbsnews.com/news/transgender-killed-in-2020-merci-mack-18-total/ (Last Accessed July 29, 2020).

10 See Marzullo and Libman, Human Rights Campaign, "Research Overview:  Hate Crimes and Violence Against LGBTQ People" (2009), at page 2 [www.hrc.org/resources/hate-crimes-and-violence-against-lgbt-people] (Last Accessed September 18, 2018); Haeyoun Park and Iaryna Mykhyalyshyn, "LGBT People Are More Likely To Be Targets of Hate Crimes Than Any Other Minority Group," The New York Times (June 16, 2016) [https://www.nytimes.com/interactive/2016/06/16/us/hate-crimes-against-lgbt.html?_r=0] (Last Accessed September 18, 2018); Green, Emma, "The Extraordinarily Common Violence Against LGBT People in America:  The Attack on a Gay Club in Orlando on Sunday Is Not An Isolated Crime," The Atlantic (June 12, 2016) [www.theatlantic.com/politics/archive/2016/06/the-extraordinarily-common-violence-against-lgbt-people-in-america/486722/] (Last Accessed September 18, 2018); J. Ravitz, "Before Orlando: The (former) deadliest LGBT attack in U.S. history (June 16, 2016) [www.cnn.com/2016/06/16/health/1973-new-orleans-gay-bar-arson-attack/index.html] (Last Accessed September 18, 2018); Kacala, Alexander, "There Have Already Been More Anti-LGBT Hate Crimes This Year Than All of 2016", available at [www.unicornbooty.com/anti-lgbt-hate-crimes/] (Last Accessed September 18, 2018); Prakash, Nidhi, "This Report Says More LGBT People Were Killed So Far in 2017 Than in All of 2016," *Buzzfeed News* (August 10, 2017), available at [www.buzzfeed.com/nidhiprakash/lgbt-deaths-mid-2017?utm_term=.ls000lgVL#.nuMBBORP7] (Last Accessed September 18, 2018); Wile, Rob, "It's Still Dangerous To Be Gay In America.  Here Are The Statistics That Prove It," *Splinter* (June 12, 2016), [www.splinternews.com/it-s-still-dangerous-to-be-gay-in-america-here-are-the-1793857468] (Last Accessed September 18, 2018); "Hate Crimes Rise in 9 Major US Cities in 2017, Preliminary Data Show," *Voice of America News* (January 6, 2018), available at [https://www.voanews.com/a/hate-crimes-rise-in-nine-major-us-cities-2017-preliminary-police-data/4195018.html] (describing violence against LGBT community) (Last Accessed September 18, 2018).

11 Wile, Rob, "It's Still Dangerous To Be Gay In America.  Here Are The Statistics That Prove It," *Splinter* (June 12, 2016), [www.splinternews.com/it-s-still-dangerous-to-be-gay-in-america-here-are-the-1793857468] (Last Accessed September 18, 2018).

12 Boren, Michael, "Since Trump, More Slurs, Signs and Discrimination in Philly," *Philly.com* (August 22, 2017), available at [www.philly.com/philly/news/crime/since-trump-more-slurs-signs-and-discrimination-in-philly-20170822.html?mobi=true] (describing the "LGBT community" among the "most common targets") (Last Accessed September 18, 2017).

being subject to violence if Plaintiff is outed as transgender in this lawsuit.  Plaintiff has alleged

a legitimate fear of violence, with particularity, which is sufficient to justify anonymity in this

case.  Plaintiff respectfully requests that this Honorable Court permit them to adopt a pseudonym

in this lawsuit, and to redact their home address from the Complaint.

      C.      **The Public Interest In Maintaining The Confidentiality of Plaintiff's Identity.**

According to Megless, when deciding the issue of anonymity, a court should also

consider "the magnitude of the public interest in maintaining the confidentiality of the litigant's

identity . . . ."  Megless, 654 F.3d at 409.  Conversely, if "there is an atypically weak public

interest in knowing the litigant's identit[y]," then this weighs in favor of permitting anonymity.

Id.  Generally speaking, as above, individuals who are LGBT are recognized as having a strong

interest in confidentiality.  See, e.g., Doe v. Pa. Dep't of Corrections, No. 19-1584, 2019 WL

5683437 at *2 (M.D. Pa. Nov. 1, 2019); Doe v. Univ. of Scranton, Case No. 3:19-cv-01486, ECF

No. 24, p. 6 (M.D. Pa. Mar. 16, 2020) ("Without the protection of anonymity, future such

plaintiffs would likely decline to participate in the lawsuit, and the public's interest in ensuring

that those responsible for sexual orientation discrimination are held responsible could remain

suppressed."); Powell v. Schriver, 175 F.3d 107, 111 (2d Cir. 1999) ("[t]he Constitution does

indeed protect the right to maintain confidentiality of one's [transgender status] . . . [an] unusual

condition that is likely to provoke both an intense desire to maintain one's medical

confidentiality, as well as hostility and intolerance from others"); Doe v. Delie, 257 F.3d 309,

315-16 (3d Cir. 2001) (transgender inmate entitled to medical privacy).

Consideration of the public interest here also leans toward confidentiality, and in favor of

Plaintiff.  In the instant case, as the Plaintiff is not a public figure, there is not a particularly

strong interest in revealing their identity.  See Doe v. Provident Life and Acc. Ins. Co., 176

14

F.R.D. 464, 468 (E.D. Pa. 1997).  Furthermore, the public interest will best be served by ensuring Plaintiff can proceed anonymously so that Plaintiff is not outed beyond an extent to which they are comfortable.  Plaintiff might drop the lawsuit to avoid doing so, and justice would not be served in such a case.

       **D.**      **Plaintiff Seeks To Keep Only A Limited Amount of Information Confidential.**

Plaintiff only seeks to keep a limited amount of information private.  It is especially appropriate to permit anonymity where a court can otherwise "keep the proceedings open to the public while still maintaining the confidentiality of plaintiff's identity."  See Doe v. Provident Life and Acc. Ins. Co., 176 F.R.D. 464, 468 (E.D. Pa. 1997).  In the instant case, Plaintiff is agreeable to conducting depositions and trial with their actual preferred name and pronouns.  Plaintiff is also not requesting that this case be sealed.  The public will know everything about this case from court submissions, except the Plaintiff's name and address.  Plaintiff therefore respectfully requests that they be permitted to keep their name and address private in court filings.  The public can know about the facts and development of this case from the docket activity but, as in Doe v. Commonwealth of Pennsylvania, supra., there is very little interest in knowing a particular LGBT litigant's identity like the Plaintiff here.

       **E.**      **Plaintiff Also Requests to Keep Their Identity Confidential Pursuant to Plaintiff's Right to Medical Privacy, or HIPAA Rights, Which it is Necessary to Balance in Order to Permit Plaintiff to Pursue Their Gender Dysphoria ("GD"), or Disability-Based, Discrimination, Harassment, and Retaliation Claims.**

Plaintiff further seeks to keep their identity private because of Plaintiff's interest in medical privacy.  Plaintiff's identity should not be disclosed to the public under these facts.  See 45 CFR Part 160, Subparts A and E of Part 164; 45 C.F.R. 160.103 (the Health Insurance Portability and Accountability Act, or HIPAA).  A similar medical privacy argument was raised by a transgender plaintiff in a recent employment discrimination case, out of the Eastern District

of Pennsylvania, in Doe v. The Hospital of the University of Pennsylvania, Case No. 19-2881

(E.D. Pa. 2019) (Dkt. 11).  The Court granted the anonymity request in that case.  See Doe v.

The Hospital of the University of Pennsylvania, Case No. 19-2881 (E.D. Pa. Dec. 9, 2019) (Dkt.

27).  Plaintiff in the instant action is advancing a similar medical privacy argument.  It is well-

recognized that the potential social stigma associated with certain mental health conditions can

also independently justify anonymity. See Doe v. United Behavioral Health, No. 10-5192, 2010

WL 5173206 (E.D. Pa. Dec. 10, 2010); Doe v. Provident Life and Accident Insurance Company,

176 F.R.D. 464 (E.D. Pa. 1997); and Doe v. Hartford Life & Accident Insurance Company, 237

F.R.D. 545 (D.N.J. 2006).

Plaintiff's medical diagnosis and the fact that their dysphoria was not accommodated, but

rather exacerbated by Defendant's conduct, is relevant to this case.  Plaintiff alleges Defendants

are liable for the mental health challenges Plaintiff faced, which were exacerbated on account of

the employment discrimination Plaintiff experienced.  Consequently, Plaintiff has a strong

interest in not having their identity revealed in this lawsuit, thereby associating Plaintiff with the

potential stigma of having a health condition such as gender dysphoria.  This is an additional

reason to grant anonymity in the instant case.

## V.   CONCLUSION:

For all of the foregoing reasons, Plaintiff respectfully requests that this Honorable Court

grant the instant Motion to Proceed Anonymously; permit Plaintiff to use the pseudonym, "Roe";

and permit Plaintiff to redact their address from the Complaint.

16

Respectfully submitted,


**THE LAW OFFICES OF ERIC A. SHORE, P.C.**


DATED: 07/29/2020          BY:     _/s/ Justin F. Robinette ,Esquire_
                                    **JUSTIN F. ROBINETTE, ESQUIRE**
                                    Two Penn Center
                                    1500 JFK Boulevard, Suite 1240
                                    Philadelphia, PA 19102
                                    Tel:  (215) 944-6121
                                    Fax: (215) 944-6124
                                    E-mail: JustinR@ericshore.com

                                    _Attorney for Plaintiff_

17